UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VETCHECK LLC D/B/A VETCHECK PET URGENT CARE CENTER, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 1:24-cv-00709-TWP-MJD |
| HARTLEY-THOMAS GROUP, LLC, ) SABRENA HARTLEY, ) CHRISTINE THOMAS, ) ) | |
| Defendants. ) ) | |
| CHRISTINE THOMAS, ) SABRENA HARTLEY, ) HARTLEY-THOMAS GROUP, LLC, ) ) | |
| Counter Claimants, ) ) | |
| v. ) ) | |
| VETCHECK LLC D/B/A VETCHECK PET URGENT CARE CENTER, ) ) ) | |
| Counter Defendant. ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

This matter is before the Court on a Motion for Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65, filed by Plaintiff VetCheck LLC d/b/a VetCheck Pet Urgent Care Center ("VetCheck") (Filing No. 4). VetCheck initiated this lawsuit against Defendants the Hartley-Thomas Group, LLC ("HTG") and its members, Sabrena Hartley ("Ms. Hartley") and Christine Thomas ("Dr. Thomas") (collectively, "Defendants") alleging breach of contract and violations of trademarks (Filing No. 1). VetCheck alleges that Defendants have violated the non-competition clause (the "Non-Compete Clause") of their Franchise Agreement and now moves the Court to

issue a preliminary injunction enjoining Defendants from operating their business. For the following reasons, the Motion is **denied**.

## I.     BACKGROUND

VetCheck is an Indiana limited liability company, with its principal place of business located in Fishers, Indiana (Filing No. 1 at 2 ¶ 2). It owns and operates animal hospitals in Indiana, Ohio, and Texas. VetCheck opened its first VetCheck Pet Urgent Care Center in Fishers, Indiana, in 2018 (Filing No. 36-2 at 10:1-6).[1]

HTG is a Pennsylvania limited liability company with its principal place of business located in York, Pennsylvania (Filing No. 1 at 2 ¶ 4). Ms. Hartley and Dr. Thomas both have an ownership interest in HTG. *Id.* at 2 ¶ 7. On June 28, 2021, HTG and VetCheck entered into the Franchise Agreement to open a new VetCheck Pet Urgent Care Center in York, Pennsylvania (the "York Center") (Filing No. 1 at 9 ¶ 32, Filing No. 44 at 3). The York Center was the only one of VetCheck's Pet Urgent Care Centers in Pennsylvania and was the only one to be operated by a franchisee (Filing No. 36-2 at 30:15-23). HTG entered into a ten-year lease and assumed bank loans to pay for the York Center (Filing No. 35-2 at 3 ¶ 13-14). VetCheck was not a party to the lease (Filing No. 35-7 at 3).

Section 13 of the Franchise Agreement required HTG to pay certain fees, including royalty fees, website and digital marketing fees, and marketing contributions (Filing No. 1-1 at 22-24). Section 19 of the Franchise Agreement--Default and Termination--set forth the procedures for Termination by the Franchisor and by the Franchisee. *Id*. at 31-33. The Franchise Agreement further contained a Non-Compete Clause which states in relevant part,

---

[1] Some of the ECF pages contain four pages of depositions. Therefore, the Court's citations refer to the original deposition page number rather than the ECF page number.

2

> During the Initial Term and for a period of two (2) years after the expiration or termination of this Agreement, regardless of the cause for termination, [HTG] shall not, either directly or indirectly:
> - Own an interest in, manage, operate, or provide assistance to any Competitive Business as a proprietor, partner, investor, lender, shareholder, director, officer, member, manager, employee principal, agent, representative, advisor, franchisor, franchisee, consultant or otherwise within (i) [York County]; or (ii) within an eight (8) mile radius of [York County]; or
> - Solicit or otherwise attempt to induce or influence any customer, employee, or suppliers to terminate or modify their business relationship with [VetCheck], other VetCheck franchisees, or to compete with [VetCheck] or other VetCheck franchisees.

(Filing No. 1-1 at 38). The Franchise Agreement defines a "Competitive Business" as follows,

> Competitive Business means any business that offers or provides (or grants franchises or licenses to others to operate a business that offers or provides) (I) general veterinary services; (II) walk-in veterinary services; (III) urgent and emergency care to animals; (IV) surgical services to pets; (VI) in-house diagnostics such as blood work, fecal exams, hormonal profiles, blood clotting parameters, and digital x-ray; or (VII) other services that are the same as or similar to the services being offered by VetCheck under the franchise system.

*Id.* at 7.

Ms. Hartley, Dr. Thomas and an HTG staff member attended a three-day VetCheck training program in November 2021 (Filing No. 35-2 at 3 ¶ 15). A binder of materials, which VetCheck refers to as its "Confidential Operations Manual," was given to the HTG staff member (Filing No. 35-3 at 3 ¶ 21).

In July 2023, HTG sent a letter to VetCheck alleging that VetCheck had breached the Franchise Agreement by failing to provide any advertising help, failing to update the website as required by the Franchise Agreement, causing HTG to incur additional architecture fees despite paying the VetCheck architect, and that HTG had received "virtually no value at all" from its $50,000 franchise fee paid to VetCheck (Filing No. 35-2 at 6-7). The letter alleging breach specifically provided for sixty days for VetCheck to cure or for the parties to come to a resolution.

*Id.* The record is unclear as to what occurred during the discussions that followed the July 2023 letter.

Around November 2023, HTG stopped making the required fee payments and providing the required reports under the Franchise Agreement (Filing No. 1 at 11 ¶ 43). In February 2024, counsel for VetCheck contacted HTG to provide a notice of default under Section 19 of the HTG Franchise Agreement. *Id.*, ¶44. As part of the notice, VetCheck informed HTG that HTG had failed to pay fees and provide reports, which constitute an act of breach of the HTG Franchise Agreement. *Id.*, ¶45. On March 20, 2024, VetCheck sent a Notice of Termination of the Franchise Agreement to HTG citing their non-payment of monthly and royalty fees as the reason for termination (Filing No. 1-3 at 2). The Notice of Termination of the Franchise Agreement outlined the parties' previous efforts to address Defendants' acts of breach and default and catalogued forward-options for how to cure and/or remedy the defaults that had led to Termination. *Id.* ¶48. The Notice also summarized HTG's forward-options, based on the nature of the parties' previous discussions: HTG could begin the wind-down procedures and VetCheck could enforce its contractual right to purchase all the assets held by the Franchised Business (including all equipment, supplies, and other inventory) at fair market value. *Id.*

After VetCheck terminated the Franchise Agreement, HTG contracted for and started a new database and avers that it did not retain any customer list from the database it created during the franchise relationship. (Filing No. 35-2 at 4 ¶ 23; Filing No. 35-3 at 4 ¶ 25). Thereafter, HTG formally registered a new name, "Petz R Us," with the Pennsylvania Secretary of State's office to operate Petz R Us in the same building they had previously ran VetCheck (Filing No. 38-2 at 3).

On April 24, 2024, VetCheck filed a Complaint (Filing No. 1) and the instant Motion for Preliminary Injunction (Filing No. 4). Then, on May 16, 2024, HTG sent an email reaching out to

4

all the referring hospitals it used when operating as a VetCheck clinic to inform them that HTG was no longer associated with VetCheck and stated that HTG's new business, Petz R Us, offered the same services with the same owners (Filing No. 38-20 at 3).

On May 28, 2024, VetCheck and Defendants (collectively, "Parties") jointly moved for, and the Court granted, an Agreed Injunction (Filing No. 29). Pursuant to the Agreed Injunction Order, HTG was to cease all usage of any trademark or confidential information belonging to VetCheck, was not to use any advertising materials, devises, insignias, slogans, designs, signs, forms, or trade dress of VetCheck, and was to remove all indicia that HTG was affiliated, sponsored, endorsed, or approved in their ongoing business operations by VetCheck. *Id*. at 3. In its Amended Memorandum in Support of its Motion for Preliminary Injunction, VetCheck requests a preliminary injunction enjoining Defendants from operating a competing business – Petz R Us – and directing compliance with post termination obligations as outlined in the Franchise Agreement (Filing No. 43 at 23).

## II.   LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). To obtain a preliminary injunction, the party seeking relief must show:

> (1) it has some likelihood of success on the merits of its claim; (2) it has no adequate remedy at law; (3) without relief it will suffer irreparable harm. If the plaintiff fails to meet any of these threshold requirements, the court must deny the injunction. However, if the plaintiff passes that threshold, the court must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and consider whether an injunction is in the public interest.

*GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (citations and quotation marks omitted). "The court weighs the balance of potential harms on a 'sliding scale'

5

against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015). If the moving party fails to show any of these three requirements, the Court must deny their request for a preliminary injunction. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008), *abrogated on other grounds by Nken v. Holder*, 556 U.S. 418, 434 (2009).

### III.   DISCUSSION

In VetCheck's Amended Memorandum in support of its motion for Preliminary Injunction, they argue the Defendants admit that they stopped operating as a VetCheck franchise at the end of one day, continuing its operations as "Petz R Us" the next, and that nothing else changed. (Filing No. 43 at 1). Aside from claims that VetCheck did not perform under the Franchise Agreement, the Defendants cannot offer anything plausible to explain their conduct other than: (i) their dislike for VetCheck as the franchisor; and (ii) not making a big enough salary as a startup franchise. VetCheck argues that it requires injunctive relief "to stop the flow of harm that it cannot hope to recover via money damages." *Id*. at 17.  The Court will begin its discussion with the third requirement for injunctive relief, irreparable harm, which is dispositive.

"Harm is irreparable if legal remedies available to the movant are inadequate, meaning they are seriously deficient as compared to the harm suffered." *DM Trans, LLC v. Scott*, 38 F.4th 608, 618 (7th Cir. 2022). VetCheck "must demonstrate that [it] will *likely* suffer irreparable harm absent obtaining preliminary injunctive relief." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. Of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017) (emphasis added). "This requires 'more than a mere possibility of harm.'" *Orr v. Shicker,* 953 F.3d 490, 502 (7th Cir. 2020) (quoting *Whitaker,* 858 F.3d at 1045). "'Issuing a preliminary injunction based only on a possibility of irreparable harm is

inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Id.* (quoting *Winter*, 555 U.S. at 22). Further, to show irreparable harm, VetCheck must show a "'likelihood of substantial and *immediate* irreparable injury.'" *L.A. v. Lyons,* 461 U.S. 95, 111 (1983) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 502 (1974)) (emphasis added). Speculative future injury is not enough. *Id*.

VetCheck alleges it will be irreparably harmed in three ways absent a preliminary injunction: (1) permitting HTG to continue to operate the same business in the same location would severely damage VetCheck's ability to sign up new franchisees; (2) VetCheck will not be able to protect any goodwill it has developed or convey to other franchisees that it can protect the territory and system; and (3) VetCheck needs to protect its franchise territories so it can re-franchise them if needed, otherwise the growth of VetCheck's franchise system will be threatened (Filing No. 43 at 17-22).

First, VetCheck argues that an essential function of a successful franchisor and franchise system is to sign up new franchisees. *Id*. at 18. It contends that allowing HTG to continue operating the same business in the same building would "severely damage VetCheck's ability to sign up new franchisees." *Id*. VetCheck uses the following example to further its argument: "For example, an interested franchisee exploring online reviews may come across predominantly negative reviews of a particular franchise location. These [reviews] may dissuade otherwise interested franchisees from entering into a franchise agreement with the franchisor." *Id.* The Court does not see how online reviews of a franchise location are connected to a breach of a non-competition clause. Even a franchise location that has not breached a non-compete clause may nevertheless receive poor online reviews dissuading other interested franchisees. Importantly, an agreed preliminary

7

injunction is already in place. The Parties have agreed, and the Court has ordered, that HTG will not in any way represent that it is affiliated with VetCheck (Filing No. 29 at 3). Further, VetCheck has failed to clearly show that HTG's Petz R Us business will affect their ability to sign up franchisees. Rather, their argument remains hypothetical in nature.

Second, VetCheck argues that if the preliminary injunction is not granted, it will not be able to "protect [the] goodwill it has developed or convey to other franchisees (whether current or prospective) that it can protect the territory and system." (Filing No. 43 at 19). However, this argument is also based on speculation. Whether VetCheck can protect future unascertainable franchisees and each of their territories has no bearing on whether VetCheck will suffer immediate irreparable harm in this case. VetCheck argues that the irreparable harm "transcends purely competitive contemplations" because it is a "first of its kind pet urgent care center franchise model in the York, Pennsylvania territory" and "[t]here are no other businesses like it in the territory . . ." (Filing No. 43 at 20). VetCheck surmises that its goodwill and reputation is novel and therefore "it is much more critical to ensure the reputation and good will of the franchise are protected." *Id.* at 21. The Court is not persuaded.

Even if VetCheck was a "first of its kind" business in York, the Court fails to see how this transforms VetCheck's speculative future harm into an immediate and irreparable one. Simply being a first of its kind business does not rise to the level of clearly showing that VetCheck is entitled to injunctive relief. It is also apparent to the Court that there are no other franchisees with whom VetCheck must convey that it can protect their territory because HTG was VetCheck's only franchisee. This possibility of future harm does not warrant granting the preliminary injunction. *Winter,* 555 U.S. at 22.

Third, VetCheck argues that it "needs to protect its franchise territories so it can re-franchise them if needed." *Id*. Once again, this possibility of future harm is speculative. VetCheck may have been able to provide a clear showing of irreparable harm had it shown current efforts to re-franchise the territory. However, it does not do so. Instead, VetCheck argues that HTG should not be allowed to operate a pet urgent care in York in case VetCheck later decides that it wants to enter into a franchise agreement with another franchisee in York. Such alleged harm is speculative.

VetCheck cites *Quizno's Corp. v. Kampendahl*, to claim irreparable harm arguing that the court granted an injunction "to ensure franchisor's ability to re-enter [the] market; to combat the threat to the entire franchise; and to send other franchis[ees] the message that franchise agreements cannot be disregarded." No. 01 C 6433, 2002 U.S. Dist LEXIS 9124, at *22 (N.D. Ill. May 20, 2002). However, the defendant in *Kampendahl* was not merely making sandwiches but was using Quizno's "recipes, menus, signs, and ovens." *Id*. at 20. Here, as discussed above, HTG is not using VetCheck's signs, insignias, or other materials associated with the franchise. HTG is also not using trade secrets like recipes or menus. Rather, HTG is performing veterinary services which are common to all pet emergency clinics. There are also no other franchisees for whom to send a message and there is no threat to the system because HTG was VetCheck's only franchisee (Filing No. 36-2 at 30:15-23). Any "system" that might be harmed is an entity consisting of unascertainable future franchisees. As discussed, this possibility of future harm does not warrant a preliminary injunction.

The Court does not dispute that VetCheck may have a legitimate business interest in York. However, any harm that might come in the absence of a preliminary injunction is entirely speculative. It is not enough to argue that some unascertainable future franchisee may not want to enter into an agreement or may breach an agreement if the Court doesn't grant a preliminary

9

injunction. VetCheck has not clearly shown that HTG's current business operations are taking customers away from VetCheck as VetCheck has no ongoing business operations in York, Pennsylvania. Moreover, VetCheck has not shown that it is currently trying to re-enter the market in York. Rather, VetCheck's arguments rest on protecting the territory in case it wants to re-franchise later and protecting future unascertainable franchisees. Therefore, VetCheck has failed to show that it will suffer irreparable harm by the Court's denial of the preliminary injunction.

Having determined that VetCheck has failed to satisfy one of the necessary requirements for preliminary injunctive relief, the Court need not address the likelihood of success on the merits or whether an adequate remedy at law is available.

## IV.   CONCLUSION

For the reasons stated above, VetCheck has failed to show irreparable harm, and its Motion for Preliminary Injunction (Filing No. 4) is **DENIED**. The parties' Agreed Injunction Order, that requires HTG to cease all usage of any trademark or confidential information belonging to VetCheck, not use any advertising materials, devises, insignias, slogans, designs, signs, forms, or trade dress of VetCheck, and to remove all indicia that HTG was affiliated, sponsored, endorsed, or approved in their ongoing business operations by VetCheck (Filing No. 29), shall remain in effect during the pendency of this action.

**SO ORDERED**.

Date:   3/18/2025

*[Signature]*
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Joshua F. Brown
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
jfbrown@taftlaw.com

Peter M. Good, Esq.
Caldwell & Kearns, P.C.
pgood@cklegal.net

Manuel Herceg
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
mherceg@taftlaw.com